# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF MICHIGAN

* * * * *

EDWARD SATTLER, an individual, BECKYANN CROWLEY, an individual, WILLIAM VIVERETTE, an individual, MAMIE MCDONALD, an individual, JEFFREY P. NEUBAUER, an individual, and NICHOLAS BARNES, as Personal Representative for the Estate of Clarence Stacy Barnes, for themselves and all those similarly situated,

                Plaintiffs,

v.

KENT COUNTY, a Government Unit, PETER MACGREGOR in his individual and official capacity, KENNETH D. PARRISH, in his individual capacity; ALGER COUNTY, a Government Unit, PAMELA JOHNSON, in her individual and official capacity; ALLEGAN COUNTY, a Government Unit, SALLY L. BROOKS, in her individual and official capacity; ANTRIM COUNTY, a Government Unit, SHERRY A. COMBEN, in her individual and official capacity; BARAGA COUNTY, a Government Unit, JILL C. TOLLEFSON, in her individual and official capacity, ANNE T. KOSKI, in her individual capacity; BARRY COUNTY, a Government Unit, SUSAN VANDECAR, in her individual and official capacity; BENZIE COUNTY, a Government Unit, MICHELLE THOMPSON, in her individual and official capacity; BERRIEN COUNTY, a Government Unit, SHELLY WEICH, in her individual and official capacity, BRET E. WITKOWSKI, in his individual capacity; CALHOUN COUNTY, a Government Unit, BRIAN W. WENSAUER, in his individual and official capacity; CASS COUNTY, a Government Unit, HOPE ANDERSON, in her individual and official capacity; CHARLEVOIX COUNTY, a Government Unit, BETTY SIMON in her individual and official capacity, MARILYN

Case No. 22-cv-_____

Hon. _____

**COMPLAINT**

**(JURY DEMAND)**

**\*\* CLASS ACTION \*\***

COUSINEAU, in her individual and official capacity; CHIPPEWA COUNTY, a Government Unit, CARMEN FAZZARI, in her individual and official capacity; DELTA COUNTY, a Government Unit, SHERRY GODFREY, in her individual and official capacity; DICKINSON COUNTY, a Government Unit, LORNA CAREY, in her individual and official capacity; EATON COUNTY, a Government Unit, ROBERT ROBINSON, in his individual and official capacity; EMMET COUNTY, a Government Unit, MARY MITCHELL, in her individual and official capacity; GOGEBIC COUNTY, a Government Unit, LISA HEWITT, in her individual and official capacity; GRAND TRAVERSE COUNTY, a Government Unit, HEIDI SCHEPPE, in her individual and official capacity; HILLSDALE COUNTY, a Government Unit, STEPHENIE KYSER, in her individual and official capacity; HOUGHTON COUNTY, a Government Unit, LISA MATTILA, in her individual and official capacity; INGHAM COUNTY, a Government Unit, ERIC SCHERTZING, in his individual and official capacity; IONIA COUNTY, a Government Unit, JUDITH A. CLARK, in her individual and official capacity; IRON COUNTY, a Government Unit, MELANIE CAMPS, in her individual and official capacity; KALAMAZOO COUNTY, a Government Unit, THOMAS WHITENER, in his individual and official capacity, MARY BALKEMA, in her individual capacity; KALKASKA COUNTY, a Government Unit, VALERIE THORNBURG, in her individual and official capacity; LAKE COUNTY, a Government Unit, KELLIE ALLEN, in her individual and official capacity, BRENDA L. KUTCHINSKI, in her individual capacity; LEELANAU COUNTY, a Government Unit, JOHN GALLAGHER, III, in his individual and official capacity; MACKINAC COUNTY, a Government Unit, JENNIFER GOUDREAU, in her individual and official capacity; MANISTEE COUNTY, a Government Unit, RACHEL NELSON, in her individual and official capacity; MARQUETTE COUNTY, a

2

Government Unit, JACQUELINE SOLOMON, in
her individual and official capacity, NICHOLAS
BENSON, in his individual and official capacity;
MASON    COUNTY,    a    Government    Unit,
ANDREW R. KMETZ, IV, in his individual and
official capacity; MENOMINEE COUNTY, a
Government Unit, BARBARA A. PARRETT, in
her individual and official capacity; MISSAUKEE
COUNTY, a Government Unit, LORI COX, in her
individual and official capacity; MONTCALM
COUNTY, a Government Unit, JOANNE VUKIN,
in    her    individual    and    official    capacity;
MUSKEGON COUNTY, a Government Unit,
TONY MOULATSIOTIS, in his individual and
official capacity; NEWAYGO COUNTY, a
Government Unit, JASON O'CONNELL, in his
individual and official capacity, HOLLY MOON, in
her individual and official capacity; OCEANA
COUNTY, a Government Unit, MARY LOU
PHILLIPS, in her individual and official capacity;
ONTONAGON COUNTY, a Government Unit,
JEANNE M. POLLARD, in her individual and
official    capacity;    OSCEOLA    COUNTY,    a
Government Unit, TONIA M. HARTLINE, in her
individual    and    official    capacity,    LORI
LEUDEMAN,    in    her    individual    capacity;
OTTAWA    COUNTY,    a    Government    Unit,
AMANDA PRICE, in her individual and official
capacity; ST. JOSEPH COUNTY, a Government
Unit, KATHY HUMPHREYS, in her individual and
official capacity, JUDITH L. RATERING, in her
individual capacity; SCHOOLCRAFT COUNTY, a
Government Unit, JULIE ROSCIOLI, in her
individual and official capacity; VAN BUREN
COUNTY,    a    Government    Unit,    TRISHA
NESBITT, in her individual and official capacity;
WEXFORD COUNTY, a Government Unit, and
KRISTI NOTTINGHAM, in her individual and
official capacity,

                    Defendants.
_____/

3

## COMPLAINT

Plaintiffs, both individually and on behalf of a class similarly situated individuals and entities, by and through counsel, for their Complaint states as follows:

## PARTIES

1.      Plaintiffs are or were residents of various counties in the Western District of Michigan as follows:

        a.  Edward Sattler is a resident of Kent County, Michigan;

        b.  Beckyann Crowley is a resident of Calhoun County, Michigan;

        c.  William Viverette is a resident of Muskegon County, Michigan;

        d.  Mamie McDonald is a resident of California and was a resident of Muskegon County, Michigan;

        e.  Jeffrey Neubauer is a resident of Kalamazoo County, Michigan; and

        f.  Nicolas Barnes is a resident of St. Joseph County, Michigan, and the Estate of Clarence Stacey Barnes in administered in St. Joseph County, Michigan.

2.      Defendant Counties of Alger, Allegan, Antrim, Baraga, Barry, Benzie, Berrien, Calhoun, Cass, Charlevoix, Chippewa, Delta, Dickinson, Eaton, Emmet, Gogebic, Grand Traverse, Hillsdale, Houghton, Ingham, Ionia, Iron, Kalamazoo, Kalkaska, Kent, Lake, Leelanau, Mackinac, Manistee, Marquette, Mason, Menominee, Missaukee, Montcalm, Muskegon, Newaygo, Oceana, Ontonagon, Osceola, Ottawa, Saint Joseph, Schoolcraft, Van Buren, and Wexford are governmental units in the State of Michigan that govern their individual counties (individually each a "County" and collectively, "Counties").

3.      The individually listed Defendants ("Treasurers") are or were public officials serving as county treasurers for their respective county and are sued in their individual and official capacities.

4

4.      Prior to the foreclosure referenced below, Plaintiffs owned real property as set forth below:

    a.   Edward Sattler owned property in Kent County commonly known as 1614 Hamilton Ave NW, Grand Rapids, MI ("Sattler Property");

    b.   Beckyann Crowley owned property in Calhoun County commonly known as 8659 Gorsline Rd., Battle Creek, MI ("Crowley Property");

    c.   Willie Viverette and Mamie McDonald owned property in Muskegon County commonly known as 341 Iona Avenue, Muskegon, MI ("Viverette Property");

    d.   Jeffrey Neubauer owned two properties in Kalamazoo County commonly known as 5062 Amy Dr., Portage, MI and 5040 Amy Dr., Portage, MI ("Neubauer Properties"); and

    e.   The Estate of Clarence Stacey Barnes owned property in St. Joseph County commonly known as 57900 Patterson Ln, Three Rivers, MI ("Barnes Property");

5.      Each class member similarly owned real property in one or more of the Counties which were foreclosed upon for unpaid *ad valorem* property taxes (such properties are hereinafter referred to, together with the Sattler Property, Crowley Property, Viverette Property, Neubauer Properties, and Barnes Property, as the "Subject Properties").

## JURISDICTION AND VENUE

6.      This is a civil action seeking, among other request relief, recognition of a constructive trust and unpaid "just compensation" against Defendants for violations of Article X, § 2 of the Michigan Constitution and the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 28

U.S.C. § 1343 (civil rights cases); 28 U.S.C. § 2201 (declaratory judgments via the Declaratory

Judgment Act); and 28 U.S.C. § 1367 (supplemental state law claims).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), since Defendants,

individually and collectively, conduct or have conducted business in the Western District of

Michigan and the Subject Properties are situated within the Western District of Michigan.

## TAX FORECLOSURES

9.      Prior to July 17, 2020, the collection of delinquent taxes was set out in the General

Property Tax Act at sections MCL 211.78 to MCL 211.79A ("GPTA").

10.     The GPTA allowed counties to voluntarily choose to act as the Foreclosing

Governmental Unit ("FGU") in lieu of designating the State of Michigan (the "State") to serve as

the FGU. *See* MCL § 211.78(3).

11.     If the Counties chose to be a FGU, the Defendants were permitted to seek

foreclosure of real properties that had delinquent taxes due: "[A] foreclosing governmental unit

may seek a judgment of foreclosure under [MCL § 211.78k] if the property is not redeemed as

provided under this act . . ." MCL § 211.78(7)(b).

12.     The Counties and County Treasurers chose to act as the FGU pursuant to the GPTA,

under MCL § 211.78, thus making affirmative, voluntary, and discretionary decisions for the

Counties based on their own policy.

13.     Defendants caused Plaintiffs' and class members' interest in the Subject Properties

to be foreclosed pursuant to the GPTA as a result of delinquent taxes, unpaid assessments, fees,

penalties, and/or interest (individually, "Tax Foreclosure" and collectively, "Tax Foreclosures").

14.     Following the Tax Foreclosures, the Counties retained ownership or directed,

implemented, or gave instructions that the Subject Properties be sold at auction to third parties, or

that the Subject Properties be conveyed to the State of Michigan, a county, a township, a village, a city, a land bank, or other governmental entity ("Tax Sale" or "Tax Sales").

15.    Defendants conveyed the Subject Properties pursuant to Tax Sales after the Michigan Supreme Court issued *Rafaeli*, and upon information and belief, generally, the Subject Properties were sold in August or September of 2020.

16.    Upon information and belief, the Treasurers received proceeds from the Tax Sales that exceeded the Tax Delinquencies ("Surplus Proceeds").

*RAFAELI* **GIVES RISE TO THE CLAIMS**

17.    On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli, LLC v Oakland County*, 505 Mich. 429; 952 N.W.2d 435 (2020) ("*Rafaeli*"), in which the Court held that the Surplus Proceeds from Tax Sales retained by the FGU (here the Counties) are required to be returned to Plaintiffs and class members. The *Rafaeli* opinion is attached hereto as **Exhibit 1**.

18.    *Rafaeli* held that Plaintiffs and class members have a common law right to the Surplus Proceeds and held the provisions of the GPTA which permitted the Counties to retain Surplus Proceeds violated Article X, § 2 of the Michigan Constitution. Specifically, the court opined that:

> To the extent the GPTA permits defendants to retain these surplus proceeds and transfer them into the county general fund, the GPTA is unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties.
>
> *Rafaeli,* 505 Mich. at 474-75; 952 N.W.2d at 461.

19.    The *Rafaeli* court's decision recognized Plaintiffs' and class members' vested right to return of the Surplus Proceeds as being protected by the Takings Clause of Michigan's Constitution. *Rafaeli*, 505 Mich. at 456.

7

20.     *Rafaeli* was the controlling law at the time the Subject Properties were sold (i.e. Rafaeli was decided and released before the sale of the Subject Properties).

21.     Pursuant to *Rafaeli*, once the Subject Properties generated Surplus Proceeds, Plaintiffs and class members were entitled to immediate turnover of those Surplus Proceeds.

## PUBLIC ACT 256 IS PASSED AFTER THE 2020 TAX SALES

22.     In December 2020, the Michigan Legislature passed, and the Governor signed, 2020 Public Act 255 ("PA 255") and 2020 Public Act 256 ("PA 256"), giving both acts immediate effect on December 22, 2020.

23.     PA 255 is attached as **Exhibit 2** and PA 256 is attached as **Exhibit 3**.

24.     Defendants contend that in order to receive their Surplus Proceeds, Plaintiffs and class members must first comply with the claim provisions of PA 256 as outlined in MCL § 211.78t.

25.     MCL § 211.78t(2) requires former property owners whose properties were sold after July 17, 2020 to notify the FGU of their intention to collect Surplus Proceeds "by the July 1 immediately following the effective date of the foreclosure of the property . . ."

26.     The effective date of foreclosure in this instance was March 31, 2020.

27.     The Subject Properties were sold and Surplus Proceeds were generated after July 17, 2020, but as of the July 1 immediately following the effective date of foreclosure of the Subject Properties (July 1, 2020), *Rafaeli* had not yet been decided and PA 256 did not yet exist.

28.     Plaintiffs' and class members' Surplus Proceeds were generated after the *Rafaeli* decision was issued but prior to the effective date of PA 256.

29.     PA 256 is not applicable to Plaintiffs' and class members' claims.

**PLAINTIFFS' AND CLASS MEMBERS' PROPERTIES WERE FORECLOSED AND
THE SURPLUS PROCEEDS WERE NOT TURNED OVER TO THE RIGHTFUL
OWNERS**

30.     Upon information and belief, at the time of the Tax Foreclosures of the Subject
Properties, Plaintiffs and class members owed the respective Counties small amounts of delinquent
taxes and/or assessments, interest, penalties, and fees, reasonably related to the foreclosure and
sale of the Subject Properties (hereinafter, "Tax Delinquency" or "Tax Delinquencies").

31.     Regarding the Sattler Property:

    a.  In 2020, Kent County, as FGU, seized Plaintiff's ownership interest in the
Sattler Property.

    b.  As of the date of Tax Sale, the Sattler Property accrued a Tax Delinquency of
approximately $7,309.81.

    c.  Kent County sold the Sattler Property on or about September 11, 2020 for
$102,500.

    d.  Although Defendant Kent County knew or should have known that Plaintiff had
a vested property interest in the Surplus Proceeds generated from the Tax Sale
of the Sattler Property, the County failed and/or refused to turn over to Plaintiff
the Surplus Proceeds in the amount of $95,190.19.

    e.  Plaintiff has or will suffer harm as a result of Kent County's failure and/or
refusal to turn over Plaintiff's Surplus Proceeds.

32.     Regarding the Crowley Property:

    a.  In 2020, Calhoun County, as FGU, seized Plaintiff's ownership interest in the
Crowley Property.

    b.  As of the date of Tax Sale, the Crowley Property accrued a Tax Delinquency of
approximately $3,400.

9

    c.  Calhoun County sold the Crowley Property on or about September 21, 2020 for $14,000.

    d.  Although Defendant Calhoun County knew or should have known that Plaintiff had a vested property interest in the Surplus Proceeds generated from the Tax Sale of the Crowley Property, the County failed and/or refused to turn over to Plaintiff the Surplus Proceeds in the amount of $10,600.

    e.  Plaintiff has or will suffer harm as a result of Calhoun County's failure and/or refusal to turn over Plaintiff's Surplus Proceeds.

33.    Regarding the Viverette Property:

    a.  In 2020, Muskegon County, as FGU, seized Plaintiffs' ownership interest in the Viverette Property.

    b.  As of the date of Tax Sale, the Viverette Property accrued a Tax Delinquency of approximately $4,400.

    c.  Muskegon County conveyed the Viverette Property on or about September 25, 2020 for $25,250.

    d.  Although Defendant Muskegon County knew or should have known that Plaintiffs had a vested property interest in the Surplus Proceeds generated from the Tax Sale of the Viverette Property, the County failed and/or refused to turn over to Plaintiffs the Surplus Proceeds in the amount of $20.850.

    e.  Plaintiffs have or will suffer harm as a result of Muskegon County's failure and/or refusal to turn over Plaintiffs' Surplus Proceeds.

34.    Regarding the Neubauer Properties:

    a.  In 2020, Kalamazoo County, as FGU, seized Plaintiff's ownership interest in the Neubauer Properties.

    b.  As of the date of Tax Sale, the Neubauer Properties accrued a Tax Delinquency of approximately $14,250 and $14,500 respectively.

    c.  Kalamazoo County conveyed the Neubauer Properties on or about September 22, 2020 for $151, 250 and $151, 250 respectively.

    d.  Although Defendant Kalamazoo County knew or should have known that Plaintiff had a vested property interest in the Surplus Proceeds generated from the Tax Sale of the Neubauer Properties, the County failed and/or refused to turn over to Plaintiff the Surplus Proceeds in the amount of $273,750.

    e.  Plaintiff has or will suffer harm as a result of Kalamazoo County's failure and/or refusal to turn over Plaintiff's Surplus Proceeds.

35.    Regarding the Barnes Property:

    a.  In 2020, St. Joseph County, as FGU, seized Plaintiff's ownership interest in the Barnes Property.

    b.  As of the date of Tax Sale, the Barnes Property accrued a Tax Delinquency of approximately $2,600.

    c.  St. Joseph County conveyed the Barnes Property on or about September 23, 2020 for $25,250.

    d.  Although Defendant St. Joseph County knew or should have known that Plaintiff had a vested property interest in the Surplus Proceeds generated from the Tax Sale of the Barnes Property, the County failed and/or refused to turn over to Plaintiff the Surplus Proceeds in the amount of $22,650.

    e.  Plaintiff has or will suffer harm as a result of St. Joseph County's failure and/or refusal to turn over Plaintiff's Surplus Proceeds.

36.     Regarding class members' Subject Properties:

    a.  In 2020, named Defendants, as FGUs, seized the class members' ownership interest in their Subject Properties.

    b.  As of the date of Tax Sale, the class members' Subject Properties accrued a Tax Delinquency less than the value of the Subject Property.

    c.  In each instance, the respective FGUs conveyed the class member's Subject Property for more than the Tax Delinquency or conveyed the property without a sale.

    d.  Although each respective Defendant knew or should have known that class members had a vested property interest in the Surplus Proceeds generated from the Tax Sale of the respective Subject Property, the County failed and/or refused to turn over to class member the Surplus Proceeds generated from the Subject Property.

    e.  Class members have or will suffer harm as a result of Defendants' failures and/or refusals to turn over class members' Surplus Proceeds.

37.     The Defendants failed and/or refused to turnover Surplus Proceeds to Plaintiffs and class members.

38.     Defendants' continued retention of Plaintiffs' and class members' Surplus Proceeds remains outside the scope of activity authorized by the United States Constitution or the State Constitution, a statute, local charter or ordinance, or other law.

39.     Plaintiffs demanded the Treasures turnover Surplus Proceeds, as illustrated in the attached **Exhibit 4,** to no avail.

40.     All Defendants have, in an identical fashion as outlined above, failed to return Surplus Proceeds to other similarly situated individuals in counties within the Western District.

41.    Defendants conduct falls outside the "exercise of governmental function."

42.    The Counties' actions and/or inactions continue to be undertaken in willful and wonton disregard of Plaintiffs' and class members' property rights.

43.    The Counties' retention of and/or failure to return Plaintiffs' and class members' Surplus Proceeds is outside the scope of governmental immunity.

44.    As a result of *Rafaeli* and Defendants' illegal and unconscionable retention of Plaintiffs' and class members' Surplus Proceeds, the Surplus Proceeds are and have been imbued with and subject to a constructive, involuntary, and/or *ex delicto* trust.

45.    Plaintiffs and class members remain entitled to immediate turnover/return of the Surplus Proceeds from the Subject Properties.

46.    Defendants either wantonly or intentionally caused Plaintiffs and class members harm when the Counties ignored, or otherwise disregarded, Plaintiffs' and class members' rights guaranteed under the Michigan and United States Constitutions.

47.    In light of *Rafaeli*, Defendants' failure or refusal to turnover Plaintiffs' and class members' property is a taking in violation of Article X, § 2 of Michigan's Constitution and of the Fifth Amendment of the United States Constitution.

48.    Defendants did not initiate any condemnation action, process, or procedure for the taking of or compensation for Plaintiffs' and class members' Surplus Proceeds.

49.    Defendants refuse or have otherwise ignored demands to pay just compensation for Plaintiffs' and class members' Surplus Proceeds.

50.    Defendants' retention of Plaintiffs' and class members' Surplus Proceeds with full knowledge of the Michigan Supreme Court's decision in *Rafaeli* constitutes either intentional misconduct or gross negligence which is the proximate cause of Plaintiffs' and class members' damages.

51.     The Counties did not afford Plaintiffs or class members any process, plan, or legal mechanism to seek or achieve turnover of the Surplus Proceeds Defendants received for the Subject Properties.

52.     Defendants' actions, as described herein, were undertaken pursuant to an official rule, statute, policy, and/or custom, thereby permitting Plaintiffs' and class members' claims for liability against the Counties and others claiming immunity, as set forth in *Monell v New York City Dep't of Soc Servs*, 436 U.S. 658; 98 S. Ct. 2018 (1978); *Carlton v Dep't of Corr.*, 215 Mich. App. 490; 546 N.W.2d 671 (1996).

### CLASS ALLEGATIONS

53.     This action is brought by Plaintiffs individually and pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the owners of real property, in the following counties, whose properties were foreclosed and sold in the year 2020 and whose Surplus Proceeds have not been returned or were otherwise subjected to the unconstitutional process and legislation that, absent a constructive trust, resulted in the taking, conversion, and/or *ex delicto* withholding of their Surplus Proceeds: Alger, Allegan, Antrim, Baraga, Barry, Benzie, Berrien, Calhoun, Cass, Charlevoix, Chippewa, Delta, Dickinson, Eaton, Emmet, Gogebic, Grand Traverse, Hillsdale, Houghton, Ingham, Ionia, Kalamazoo, Kalkaska, Kent, Lake, Leelanau, Mackinac, Manistee, Ontonagon, Osceola, Ottawa, Saint Joseph, Schoolcraft, Van Buren, and Wexford.

54.     The proposed class consists of all owners of real property, in Alger, Allegan, Antrim, Baraga, Barry, Benzie, Berrien, Calhoun, Cass, Charlevoix, Chippewa, Delta, Dickinson, Eaton, Emmet, Gogebic, Grand Traverse, Hillsdale, Houghton, Ingham, Ionia, Kalamazoo, Kalkaska, Kent, Lake, Leelanau, Mackinac, Manistee, Ontonagon, Osceola, Ottawa, Saint Joseph, Schoolcraft, Van Buren, and Wexford counties, whose real property, in the year 2020, pursuant to the GPTA, was seized through a real property tax foreclosure action and disposed of through a Tax

Sale for an amount in excess of the property's Tax Delinquency and who did not receive compensation for the Surplus Proceeds generated in excess of the Tax Delinquency.

55.     This action and the proposed class exclude those who have received payment for Surplus Proceeds, those who have separately filed their own personal post-Tax Foreclosure legal actions in state or federal courts for payment, turnover, or return of Surplus Proceeds, or who are members of any certified class in any other case asserting claims for the turnover/return of Surplus Proceeds or damages for failure to pay Surplus Proceeds.

56.     The number of persons who have been injured by the practices discussed herein is sufficiently numerous as to make class litigation the most practical method to secure redress for the injuries sustained and to provide class-wide equitable relief.

57.     Plaintiffs' claims are common to, and typical of, those raised by the class members Plaintiffs seeks to represent including:

   a.   whether PA 256 is unconstitutional on its face and/or as applied;

   b.   whether Plaintiffs and class members have had their property rights impaired or abrogated by PA 256;

   c.   whether Defendants failed to turn over Plaintiffs' and class members' Surplus Proceeds pursuant to the Michigan Supreme Court's decision in *Rafaeli*;

   d.   whether the Counties kept Plaintiffs' and class members' Surplus Proceeds for the benefit of the Counties;

   e.   whether the Surplus Proceeds earned interest or other pecuniary return for the benefit of the Counties

   f.   whether Defendants retained any interest or other return earned on the Surplus Proceeds for the benefit of the Counties;

g.   whether Defendants failed to put in place, have, or undertake a process to turnover Surplus Proceeds to Plaintiffs and class members;

h.   whether Defendant Counties were unjustly enriched by their illegal retention of Surplus Proceeds;

i.   whether Defendants converted Surplus Proceeds when the Counties refused and/or failed to turnover Surplus Proceeds pursuant to *Rafaeli*;

j.   whether Defendants converted Surplus Proceeds to the Counties' own use; and

k.   whether a constructive trust has been created under which Defendants hold the Surplus Proceeds for the benefit of the Plaintiffs and class members.

58.    The foregoing issues of fact and law predominate over any issues that require individualized proof.

59.    Plaintiffs and class members have suffered the same injury.

60.    There are clear questions of law raised by the named Plaintiffs' claims common to and typical of those raised by the class Plaintiffs seeks to represent including:

a.   whether the Michigan Supreme Court's decision in *Rafaeli* requires the immediate turnover of Plaintiffs' and class members' Surplus Proceeds;

b.   whether MCL § 211.78t, as amended by PA 256, is applicable to Plaintiffs' and class members' claims;

c.   whether MCL § 211.78t, as amended by PA 256, precludes Defendants from turning over Plaintiffs' and class members' Surplus Proceeds;

d.   whether, if MCL § 211.78t does entail such a prohibition, PA 256 is unconstitutional on its face and/or as applied;

e.   whether PA 256 hinders Plaintiffs' and class members' property rights;

f.  whether Defendants committed an unconstitutional taking by refusing to pay just compensation when retaining and refusing to turnover Surplus Proceeds from each Subject Property pursuant to *Rafaeli*;

g.  whether Defendants have appropriated Plaintiffs' and class members' property in the form of Surplus Proceeds without payment of just compensation in violation of Article X, § 2 of the Michigan Constitution and the Fifth Amendment of the United States Constitution pursuant to *Rafaeli*;

h.  whether Defendants committed an inverse condemnation of Plaintiffs' and class members' property when the Counties retained and failed and/or refused to turnover Plaintiffs' and class members' Surplus Proceeds pursuant to *Rafaeli*;

i.  whether Defendants acted arbitrarily and capriciously and/or in a manner that shocks the conscience by retaining and failing to deliver Plaintiffs' and class members' Surplus Proceeds pursuant to *Rafaeli*;

j.  whether Defendants acted negligently or with wonton disregard as to the rights of Plaintiffs and class members in retaining and failing to deliver Plaintiffs' and class members' Surplus Proceeds pursuant to *Rafaeli*;

k.  whether Defendants are liable for treble damages and attorney fees under MCL § 600.2919a due to Defendants' failure to promptly turnover Surplus Proceeds pursuant to *Rafaeli*; and

l.  whether Defendant Counties have been unjustly enriched by their retention of Plaintiffs' and class members' Surplus Proceeds.

61.  Defendants have acted and are continuing to act on grounds generally against the interest of Plaintiffs and class members in the same manner.

17

62.     The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all class members.

63.     Plaintiffs and class members share all allegations outlined in this complaint in common.

64.     Plaintiffs, as class representative, will fairly and adequately protect the interest of the class members, will vigorously prosecute the suit on behalf of the class, and will represent the class members with highly experienced counsel.

65.     The maintenance of this action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual members of the class and/or the Defendants.

**COUNT I**
**DECLARATIVE RELIEF**
**PA 256 IS UNCONSTITUTIONAL AND DOES NOT APPLY TO PLAINTIFFS' OR CLASS MEMBERS' CLAIMS**

66.     Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

67.     "Statutes are presumed to operate prospectively . . ." *Frank W. Lynch & Co. v Flex Technologies, Inc.*, 463 Mich. 578, 583; 624 N.W.2d 180 (2001); *see also Landgraf v USI Film Products*, 511 U.S. 244 (1994).

68.     The Subject Properties were sold and Surplus Proceeds were generated after July 17, 2020, but as of the July 1 immediately following the effective date of foreclosure of the Subject Properties (July 1, 2020), *Rafaeli* had not yet been decided and PA 256 did not yet exist.

69.     PA 256 is not applicable to Plaintiffs' and class members' claims.

70.     Even if this Court were to somehow find that Plaintiffs and class members are subject to the provisions of PA 256, the statute, on its face and as applied, constitutes an illegal restraint on the exercise of Plaintiffs' and class members' vested rights.

71.     MCL § 211.78t(2) requires former property owners whose properties were sold after July 17, 2020 to notify the FGU of their intention to collect Surplus Proceeds "by the July 1 immediately following the effective date of the foreclosure of the property . . ."

72.     It is impossible for Plaintiffs and class members to comply with the requirements of MCL § 211.78t.

73.     To subject Plaintiffs and class members to a process that is impossible to follow as a prerequisite to exercising a vested property right is an additional unconstitutional taking of Plaintiffs' and class members' property under Article X, § 2 of Michigan's Constitution and the Fifth Amendment of the United States Constitution.

74.     PA 256 constitutes a taking of property from Plaintiffs and class members. On December 21, 2020, Plaintiffs and class members had vested rights in the Surplus Proceeds generated from the Subject Properties, and on December 23, 2020 Plaintiffs and class members allegedly no longer had those rights.

75.     A statute that deprives a person or entity of property without a chance to assert the person's claim is unconstitutional. *See Ramsey v State*, 296 Mich. 499, 4651; 196 N.W. 323 (1941); *See also Mullane v Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

76.     Article X, § 2 of Michigan's Constitution and the Takings Clause of Fifth Amendment of the United States Constitution protect a self-executing constitutional right.

77.     PA 256, as applied and in practice, violates the Michigan and United States Constitutions through provisions that remove prohibit self-executing constitutional rights to

receive "just compensation" under Article X, § 2 of Michigan 1963 Constitution and the Fifth Amendment of the United States Constitution.

78.     The State Legislature cannot remove self-executing constitutional rights.

79.     PA 256 also violates the Equal Protection Clause under Article I, § 2 of Michigan's Constitution and the Fourteenth Amendment of the United States Constitution by implementing an impermissible classification scheme to the disadvantage of 2020 claimants.

80.     MCL § 211.78t(2), as amended by PA 256, divides taxpayers into two categories – taxpayers whose properties were sold after July 17, 2020 in the year 2020 and taxpayers whose properties were sold after July 17, 2020 in years subsequent to 2020. Therefore, the statute created a classification scheme.

81.     MCL § 211.78t, as amended by PA 256, prohibits claimants whose properties were sold after July 17, 2020 in the year 2020 from obtaining their Surplus Proceeds but does not place the same restraint on claimants whose properties were sold after July 17, 2020 in years subsequent to 2020.

82.     The classification scheme under PA 256 interferes with Plaintiffs' and class members' vested and fundamental property rights and is, therefore, illegal and impermissible.

83.     Further, PA 256 denies Plaintiffs and class members procedural and substantive due process under the Michigan and United States Constitutions.

84.     The procedure outlined in MCL § 211.78t(2) abrogates Plaintiffs' and class members' vested property rights without notice and without providing an opportunity for Plaintiff and class members to present their objections.

85.     PA 256 eliminates any meaningful opportunity for Plaintiffs and class members to obtain their Surplus Proceeds; due to the July 1 deadline under PA 256, Plaintiffs and class members never had an opportunity to claim their Surplus Proceeds.

86.     Further, Plaintiffs and class members were not provided with notice of the July 1 deadline and did not have the opportunity to voice their objections before being deprived of their right to Surplus Proceeds.

87.     Additionally, PA 256 impinges on Plaintiffs' and class members' vested, fundamental property rights in an unconscionable manner by completely abrogating Plaintiffs' and class members' right to obtain the Surplus Proceeds generated from the Subject Properties.

88.     The government's interference with Plaintiffs' and class members' property rights through the enactment of PA 256 does not serve a legitimate governmental interest.

89.     PA 256 is illusory.

90.     PA 256 is not retroactive and not applicable to sales prior to its effective date of December 22, 2020.

91.     Plaintiffs' and class members' Surplus Proceeds were generated after the Michigan Supreme Court's decision in *Rafaeli* but prior to the effective date of PA 256.[1]

92.     Defendants continue to use PA 256 as a shield to avoid their obligation to return Plaintiffs' and class members' Surplus Proceeds

93.     Defendants' continued retention of Plaintiffs' and class members' Surplus Proceeds pursuant to PA 256 is unconstitutional and illegal.

94.     Defendants have been unjustly enriched by their unconstitutional and illegal retention of Plaintiffs' and class members' Surplus Proceeds.

---

[1] Pursuant to *Rafaeli*, surplus proceeds are generated at the time of sale. *See Rafaeli*, 505 Mich. at 476-77 (recognizing takings claim as compensable only after tax-foreclosure sale produces a surplus). Tax sale auctions for the Counties occurred between August and October of 2020 (e.g. Plaintiff's property was sold tax auction on September 11, 2020). Thus, the surplus proceeds for all 2020 claimants were generated between August and October of 2020 which was after *Rafaeli* was decided but prior to the enactment of PA 256.

95.     Plaintiffs and class members are entitled to the imposition of a constructive trust on their Surplus Proceeds.

96.     An actual controversy within the Court's jurisdiction has arisen between Plaintiffs and class members and Defendants concerning the applicability and constitutionality of PA 256.

## COUNT II
## CONSTRUCTIVE TRUST

97.     Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

98.     After the Michigan Supreme Court issued its opinion in *Rafaeli*, Defendants sold the Subject Properties and generated Surplus Proceeds.

99.     Defendants failed and/or refused to turnover Plaintiffs' and class members' Surplus Proceeds.

100.    Defendants acquired custody of Plaintiffs' and class members' property under such circumstances that Defendants may not in good conscience retain the beneficial interest of Plaintiffs' and class members' Surplus Proceeds.

101.    Defendants acquired custody of Plaintiffs' and class members' property by way of unconstitutional provisions under the GPTA. Despite knowledge of the Michigan Supreme Court's decision in *Rafaeli*, Defendants continue to unlawfully hold Plaintiffs' and class members' Surplus Proceeds.

102.    A constructive trust arises by operation of law. The Michigan Supreme Court in *Weir v Union Trust Co*, 188 Mich. 452, 463; 154 N.W.2d 357 (1915) stated:

> Constructive trusts arise by operation of law. The following is found in 39 Cyc. p. 169:

> 'Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, active or constructive, is their essential element. Actual fraud is not necessary, but such a trust will arise whenever the

circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts *ex maleficio* or *ex delicto*, or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice.'

103.    A constructive trust exists when "property has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weaknesses or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property." *Kammer Asphalt Paving Co., Inc v East China Twp. Sch.*, 443 Mich. 176, 188; 504 N.W.2d 635 (1993).

104.    A court is permitted to impose a constructive trust hen necessary to do equity and avoid unjust enrichment. *Id*. Thus, a constructive trust may be imposed under any circumstance that renders it unconscionable for the holder of legal title to retain and enjoy the property. *Id*.

105.    Defendants' conduct in failing to turn over Plaintiffs' and class members' Surplus Proceeds is *ex delicto*.

106.    *Rafaeli* imposed an affirmative obligation on Defendants to return Plaintiffs and class members' Surplus Proceeds: "Similarly, we hold that defendants were required to return the surplus proceeds and that defendants' failure to do so constitutes a government taking under the Michigan Constitution entitling [Plaintiffs and class members] to just compensation." *Rafaeli*, 505 Mich. at 479.

107.    Despite knowing that the Michigan Supreme Court ruled that they were obligated to return the Surplus Proceeds to Plaintiffs and class members, Defendants have refused to do so.

108.    Defendants' conduct is a willful continuance of unconstitutional and unjust practices that Defendants practiced prior to *Rafaeli*.

109.    Defendants acquired possession of Plaintiffs' and class members' Surplus Proceeds through duress, taking advantage of Plaintiff's and class members' weakness, and through Defendants' own conduct of attempting to enforce the unconstitutional provisions of PA 256, and therein, making it impossible for Plaintiff and class members to obtain their Surplus Proceeds.

110.    Defendants have been unjustly enriched by their retention of Plaintiffs' and class members' Surplus Proceeds.

111.    Defendants acquired and continue to hold Surplus Proceeds which are imbued with and subject to a constructive trust for the benefit of Plaintiffs and class members as a matter of law.

112.    In is inequitable and unconscionable for Defendants to retain Plaintiffs' and class members' Surplus Proceeds as well as any benefits Defendants have obtained from retaining Plaintiffs' and class members' Surplus Proceeds.

113.    Plaintiffs and class members are the beneficiaries to constructive trusts in their favor.

**COUNT III**
**UNJUST ENRICHMENT**
**(AGAINST COUNTY DEFENDANTS)**

114.    Plaintiffs and class members incorporate the allegations contained in all pertaining paragraphs.

115.    Defendants have been unjustly enriched by its illegal taking of Plaintiffs' and class members' Surplus Proceeds.

116.    Upon information and belief, Defendants have put Plaintiffs' and class members' Surplus Proceeds to public use and/or generated interest income from those Surplus Proceeds.

117.    Defendants have been benefited by their retention of Plaintiffs' and class members' Surplus Proceeds.

24

118.    The benefits Defendants have received from retaining Plaintiffs' and class members' Surplus Proceeds are at Plaintiff's and class members' expense.

119.    Plaintiffs and class members do not have an adequate and complete remedy at law except as asserted in this complaint.

120.    It is inequitable for Defendants to retain Plaintiffs' and class members' property and any benefits Defendants have obtained from retaining Plaintiffs' and class members' property.

**COUNT IV**
**TAKING – FIFTH AMENDMENT VIOLATION**
**"ARISING DIRECTLY" UNDER THE FIFTH AMENDMENT (AGAINST ALL DEFENDANTS)**

121.    Plaintiffs and class members incorporate the allegations contained in all proceeding paragraphs.

122.    Plaintiffs and class members make this claim directly under the Fifth Amendment of the United States Constitution.

123.    The Fourteenth Amendment of the United State Constitution has made the Fifth Amendment directly applicable to the individual States.

124.    The taking of Plaintiffs' and class members' Surplus Proceeds without just compensation is in violation of the Fifth Amendment.

125.    Defendants' refusal to take any action effectuating the turnover of Plaintiffs' and class members' property deprived Plaintiffs and class members of their constitutional right to just compensation in violation of the Fifth Amendment, and the violation can, therefore, be remedied by a direct claim under the Fifth Amendment.

126.    The enactment of PA 256 abrogated Plaintiffs' and class members' right to obtain Surplus Proceeds; PA 256 is an additional taking of Plaintiffs' and class members' property in violation of the Fifth Amendment.

127.    Defendants have illegally retained Plaintiffs' and class members' Surplus proceeds since those Surplus Proceeds were generated in 2020.

128.    Plaintiffs and class members are entitled to post-tax sale interest on their Surplus Proceeds as a part of just compensation.

129.    Upon information and belief, Defendants have accrued interest on Plaintiffs' and class members' Surplus Proceeds.

130.    Defendants' retention of any earnings or interest on the Surplus Proceeds is a continual, ongoing taking that is causing a continual harm.

131.    Plaintiffs and class members have been injured by Defendants' unlawful retention of their Surplus Proceeds and have suffered damages.

**COUNT V**
**42 U.S.C. § 1983**
**TAKING – FIFTH AMENDMENT VIOLATION**
**(AGAINST ALL DEFENDANTS)**

132.    Plaintiffs and class members incorporate the allegations contained in the proceeding paragraphs.

133.    The Fifth Amendment, made applicable to the States via the Fourteenth Amendment, is a constitutional provision and right requiring payment of just compensation upon a taking by Defendants. *See Knick v Twp. Of Scott*, 139 S. Ct. 2162 (2019).

134.    Defendants have taken Plaintiffs' and class members' Surplus Proceeds and appropriated this property for public use without the payment of just compensation in violation of the Fifth Amendment to the United States Constitution.

135.    Defendants' refusal to take action to effectuate the return of Plaintiffs' and class members' property despite *Rafaeli* deprived Plaintiffs and class members of their constitutional right to just compensation in violation of the Fifth Amendment to the United States Constitution.

136.    The enactment of PA 256 abrogated Plaintiffs' and class members' right to obtain Surplus Proceeds; PA 256 is an additional taking of Plaintiffs' and class members' property in violation of the Fifth Amendment.

137.    Plaintiffs and class members are entitled to interest from the time of taking until payment as a part of just compensation in accordance with *Jacobs v U.S.*, 290 U.S. 13 (1933); *Knick v Twp. Of Scott*, 139 S. Ct. 2162 (2019) and its progeny.

138.    Defendants' retention of any earnings or interest on Plaintiffs' and class members' Surplus Proceeds is a continual, ongoing taking that is causing continual harm.

139.    Defendants' taking of Plaintiffs' and class member's Surplus Proceeds is actionable under 42 U.S.C § 1983, and Plaintiffs and class are entitled to attorney fees pursuant to 42 U.S.C. § 1988.

140.    Plaintiffs and class members have been injured by Defendants' unlawful retention of their Surplus Proceeds and have suffered damages.

## COUNT VI
## 42 U.S.C. § 1983
## VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION (AGAINST ALL DEFENDANTS)

141.    Plaintiffs and class members incorporate the allegations contained in all proceeding paragraphs.

142.    The Fourteenth Amendment of the United States Constitution guarantees substantive due process.

143.    The Fourteenth Amendment is applicable to the State of Michigan.

144.    Defendants' retention of Plaintiffs' and class members' Surplus Proceeds impinged on Plaintiffs' and class members' vested property right to those Surplus Proceeds and deprived them of substantive due process.

145.    Defendants' conduct in seizing Plaintiffs' and class members' Surplus Proceeds and refusal to return the same, despite knowledge of the Michigan Supreme Court's decision in *Rafaeli* amounts to arbitrary governmental action that shocks the conscience.

146.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

147.    Plaintiffs and class members do not have an adequate remedy at law except as asserted in this complaint.

**COUNT VII**
**42 U.S.C. § 1983**
**VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION (AGAINST ALL DEFENDANTS)**

148.    Plaintiffs and class members incorporate the allegations contained in all proceeding paragraphs.

149.    Plaintiffs and class members are entitled to procedural due process under the Fourteenth Amendment of the United States Constitution.

150.    The Fourteenth Amendment is applicable to the State of Michigan.

151.    Plaintiffs and class members have a constitutionally protected property interest in the Surplus Proceeds generated from the Subject Properties.

152.    Defendants provided no method or procedure for Plaintiffs and class members to secure or obtain their Surplus Proceeds from Defendants.

153.    Defendants' taking and retention of Plaintiffs' and class members' Surplus Proceeds without notice or the opportunity to object deprived Plaintiffs and class members of procedural due process.

154.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

## COUNT VIII
## 42 U.S.C. § 1983
## VIOLATION OF THE EIGHTH AMENDMENT
## (AGAINST ALL DEFENDANTS)

155.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

156.    This Count is plead to the extent that Defendants argue or assert that Plaintiffs and class members were punished with an in-rem civil forfeiture pursuant to the GPTA.

157.    This count is also pled to the extent that  MCL § 211.78t(9) is made applicable to Plaintiff and class members and used to decrease the amount of Plaintiffs' and class members' Surplus Proceeds by the 5% commission fee stated therein.

158.    The Fourteenth Amendment makes the Eighth Amendment applicable to the individual states.

159.    By imposing and retaining an excessive fine in the form of the *in-rem* civil forfeiture of Plaintiff's and class members' equity interest in the Subject Properties in excess of the Tax Delinquencies, Plaintiffs' and class members' Eighth Amendment rights have been violated.

160.    Defendants' retention of Plaintiffs' and class members' Surplus Proceeds, which by definition is exclusive of the Tax Delinquencies, is punitive and not remedial.

161.    Defendants' retention of a 5% commission fee deducted from Plaintiffs' and class members' Surplus Proceeds is punitive.

162.    Defendants' conduct was reckless and undertaken with complete indifference to Plaintiffs' and class members' federal right to be free from violations of the Eighth Amendment.

163.    Violations of the Eight Amendment are remedied by a money judgment against Defendants, pursuant to 42 U.S.C. § 1983 and § 1988.

164.    Plaintiffs and class members have been injured by Defendants' unlawful retention of their Surplus Proceeds and have suffered damages.

## COUNT IX
## TAKING CLAIM – INVERSE CONDEMNATION IN VIOLATION OF ARTICLE X, § 2 OF MICHIGAN'S CONSTITUTION (AGAINST COUNTY DEFENDANTS AND DEFENDANT TREASURERS IN THEIR OFFICIAL CAPACITIES)

165.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

166.    *Rafaeli* vested in Plaintiffs and class members a property interest in Surplus Proceeds protected by Article X, § 2 of Michigan's 1963 Constitution.

167.    Defendants' retention of Plaintiffs' and class members' Surplus Proceeds after *Rafaeli* constitutes a taking under Article X, § 2 of Michigan's Constitution.

168.    The enactment of PA 256 abrogated Plaintiffs' and class members' right to obtain Surplus Proceeds; PA 256 is an additional taking of Plaintiffs' and class members' property in violation of Article X, § 2 of Michigan's Constitution.

169.    Defendants took Plaintiffs' and class members' property without using any direct condemnation process before the taking, including those Defendants could have utilized as outlined under the Uniform Condemnation Procedures Act, MCL § 213.51, et seq.

170.    Defendants did not provide Plaintiffs and class members, on or after the date their claims accrued, any opportunity to claim the Surplus Proceeds from their respective Subject Properties.

171.    Defendants did not provide or have in place any process or procedure by which Plaintiffs and class members could claim compensation for Defendants' seizure of Plaintiffs' and class members' property interests.

172.    Defendants have not paid and continue to refuse to pay just compensation to Plaintiffs and class members.

173.    Defendants do not intend to pay just compensation in the future to Plaintiffs and class members.

174.    An inverse condemnation has occurred as to the Plaintiffs and class members.

175.    Plaintiffs and class members have been injured by Defendants' actions.

176.    Plaintiffs and class members are entitled to maintain this action as an action for inverse condemnation. *See Electro-Tech, Inc. . HF Campbell Co.*, 433 Mich. 54; 445 N.W.2d 61 (1989).

## COUNT X
## VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER ARTICLE I, § 17 OF THE MICHIGAN CONSTITUTION
## (AGAINST ALL DEFENDANTS)

177.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

178.    Pursuant to Article I, Section 17 of the Michigan Constitution, Plaintiffs and class members are entitled to substantive due process.

179.    Substantive due process "protects against the arbitrary exercise of governmental power . . ." *Bonner v City of Brighton*, 495 Mich. 209, 224; 848 N.W.2d 380 (2014).

180.    Defendants' taking of Plaintiffs' and class members' Surplus Proceeds interfered with Plaintiffs' and class members' vested property rights and deprived them of substantive due process.

181.    Defendants' conduct in seizing Plaintiffs' and class members' Surplus Proceeds and refusal to return the same, despite knowledge of the Michigan Supreme Court's decision in *Rafaeli* is an arbitrary exercise of governmental power and shocks the conscience.

182.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

183.    Plaintiffs and class members do not have an adequate remedy at law except as asserted in this complaint.

**COUNT XI**
**VIOLATION OF PROCEDURAL DUE PROCESS UNDER ARTICLE I, § 17 OF THE MICHIGAN CONSTITUTION**
**(AGAINST ALL DEFENDANTS)**

184.    Plaintiffs and class members incorporate the allegations contained in all proceeding paragraphs.

185.    Plaintiffs and class members are entitled to procedural due process.

186.    Plaintiffs and class members have a constitutionally protected property interest in the Surplus Proceeds generated from the Subject Properties.

187.    Defendants provided no method or procedure for Plaintiffs and class members to secure return of their Surplus Proceeds or obtain it from Defendants.

188.    Defendants' taking and retention of Plaintiffs' and class members' Surplus Proceeds without notice or the opportunity to object or be heard deprived Plaintiffs and class members of procedural due process.

189.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

## COUNT XII
## CONVERSION
## (AGAINST ALL DEFENDANTS)

190.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

191.    Defendants' failure to promptly turnover Plaintiffs' and class members' Surplus Proceeds deprived Plaintiffs and class members of their property and constitutes an act of conversion and theft.

192.    Plaintiffs demanded the County Treasurers relinquish Plaintiffs' property.

193.    The County Treasurers took Plaintiffs' property without Plaintiffs' consent.

194.    Similarly, Defendants took class members' property without class members' consent.

195.    Defendants' continued control of Plaintiffs' and class members' properties constitutes conversion, embezzlement, or theft.

196.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' actions.

## COUNT XIII
## STATUTORY CONVERSION
## (AGAINST ALL DEFENDANTS)

197.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

198.    On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli* which obligated Defendants to return Surplus Proceeds generated from the Subject Properties and authorized Plaintiffs and class members to receive said Surplus Proceeds.

199.    Plaintiffs demanded the County Treasurers turn over Plaintiffs' property, reminding the County Treasurers of the Michigan Supreme Court's decision in *Rafaeli*, as illustrated in **Exhibit 4**.

200.    The County Treasurers refused and/or failed to turnover Plaintiffs' property.

201.    Defendants similarly refused and/or failed to turnover class members' property.

202.    Upon information and belief, Defendants have converted Plaintiffs' and class members' Surplus Proceeds to the Defendant Counties' own use, as contemplated by MCL § 600.2919a.

203.    Defendants' continued retention and control of Plaintiffs' and class members' property and Defendants' conversion of Plaintiffs' and class members' property to the Counties' own use constitutes statutory conversion under MCL § 600.2919a.

204.    As a result of Defendants' actions, Plaintiffs and class members sustained damages.

205.    Michigan law provides that a person damaged as a result of a violation of that law "may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." Plaintiffs and class members are, therefore, entitled to treble damages. MCL § 600.2919a.

206.    Pursuant to MCL § 600.2919a, Plaintiffs and class members are entitled to recover actual reasonable attorney fees incurred in bringing and prosecuting this action.

## COUNT XIV
## INJUNCTIVE RELIEF

207.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

208.    Defendants are in possession of Plaintiffs' and class members' Surplus Proceeds in violation of established Michigan law.

209.    Plaintiffs and class members do not have an adequate remedy at law except as asserted in this complaint.

210.    Equity and good conscience require that this Court enter an order granting Plaintiffs' and class members' request for injunctive relief enjoining Defendants from retaining the Surplus Proceeds and requiring Defendants to turn over the Surplus Proceeds from the Subject Properties to Plaintiffs and class members.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of those similarly situated, request that this Court grant the following relief:

a.    Enter an Order certifying this case as a class action;

b.    Enter an Order declaring that Plaintiffs will adequately represent that class and naming Plaintiffs as the lead Plaintiffs in this class action matter;

c.    Enter an Order declaring 2020 Public Act 256 as unconstitutional as applied to Plaintiffs and class members;

d.    Enter an Order declaring 2020 Public Act 256 as unconstitutional on its face;

e.    Enter an Order declaring Defendants' retention of Plaintiffs' and class members' Surplus Proceeds as unconstitutional under the Michigan and United States Constitutions;

f.    Enter an Order declaring that Plaintiffs' and class members' Surplus Proceeds are imbued with a constructive trust to remedy Defendants' unconscionable withholding of Plaintiffs' and class members' property and requiring an accounting and turnover of all Surplus Proceeds and any income earned thereon over the relevant timeframe;

g.    Enter an Order finding Defendants liable under any or all counts contained herein;

h.    Enter an Order for any and all damages and/or compensation as is deemed proper;

i.    Enter an Order requiring Defendants to turn over to Plaintiffs and class members the Surplus Proceeds plus interest from the date the Subject Properties were sold;

j.    Enter an Order disgorging any interest or money Defendants earned from retention of Surplus Proceeds;

k.   Enter an Order for an award of any and all damages available under federal and state law as applicable, including but not limited to, an award of nominal and putative damages;

l.   Enter an Order for an award of treble the amount of Surplus Proceeds plus actual attorney fees for Defendants' violation of MCL § 600.2919a;

m.   Enter an Order for an award of attorney fees and expenses pursuant to all other applicable laws, rules, or statutes;

n.   Enter an order for interest from the date of Judgment until Defendants pay the Judgment; and

o.   Enter an order for all other legal and/or equitable relief the Court deems proper.

## JURY DEMAND

For all triable issues, a jury is hereby demanded.

Date: March 31, 2022                                     Respectfully submitted,

/s/ Donald R. Visser
Donald R. Visser (P27961)
Donovan J. Visser (P70847)
Brittany Dzuris (P81438)
Bria Adderley-Williams (P84876)
*Counsel for Plaintiffs*

VISSER AND ASSOCIATES, PLLC
2480 44th Street, Suite 150
Kentwood, MI
Tel: (616) 531-9860
Fax: (616) 531-9870
donv@visserlegal.com
donovan@visserlegal.com
brittany@visserlegal.com
bria@visserlegal.com

36